

**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUL 2 3 2019

Judge Edmond E. Chang
United States District Court

UNITED STATES OF AMERICA

v.

ROBERT W. WAKSMUNDZKI,
          also known as "Flippy"

No. 19 CR 573

Judge Edmond E. Chang

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant ROBERT W. WAKSMUNDZKI, and his attorney, STEVEN R. HUNTER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.    The information in this case charges defendant with conspiracy to commit criminal infringement of a copyright, in violation of Title 18, United States Code, Sections 371 (Count One); and filing a false return, in violation of Title 26, United States Code, Section 7206(1) (Count Two).

3.    Defendant has read the charges against him contained in the information, and those charges have been fully explained to him by his attorney.

4.    Defendant fully understands the nature and elements of the crimes with which he has been charged.

**Charges to Which Defendant Is Pleading Guilty**

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the information: Count One, which charges defendant with conspiracy to commit criminal infringement of a copyright, in violation of Title 18, United States Code, Sections 371; and Count Two, which charges defendant with filing a false return, in violation of Title 26, United States Code, Section 7206(1). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

**Factual Basis**

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Two of the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a.     <u>With respect to Count One of the information:</u>

Beginning on or about July 15, 2003, and continuing to on or about June 4, 2015, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant ROBERT S. WAKSMUNDZKI, also known as "Flippy," conspired with Individual A and others known and unknown, to willfully, and for purposes of commercial advantage and private financial gain, infringe a copyright by distribution of a work being prepared for commercial distribution, by making it available on a computer

2

network accessible to members of the public, when defendant knew and should have known that the work was intended for commercial distribution, in violation of Title 17, United States Code, Section 506(a)(1)(C) and Title 18, United States Code, Section 2319(d)(2).

Specifically, beginning no later than July 15, 2003, and continuing to on or about June 4, 2015, defendant and Individual A owned and operated a series of websites with "torrentz" in the domain, including: torrentz.com, torrentz.eu, torrentz.ch, torrentz.cx, torrentz.hk, torrentz.in, torrentz.li, torrentz.me, torrentz.mx, and torrentz.ph, and torrentz-proxy.com (individually and collectively, "Torrentz"). Defendant and Individual A designed, developed, and operated Torrentz in order to encourage, induce, facilitate, engage in, and generate millions of dollars from the unlawful reproduction and distribution of copyright-protected media, including movies (some of which were still playing in theaters), television shows, music, video games, computer software, and electronic books, without permission of the copyright holder. Defendant resided in Chicago and Palos Hills, Illinois, and operated Torrentz from his home. Defendant also was the owner, agent, and sole member of Waksmundzki, LLC, through which he conducted activities related to Torrentz.

Initially, movies, television shows, music, and other copyright-protected media were made available on Torrentz, assisting visitors to the site to acquire copyright-protected media through BitTorrent technology. Later, defendant reconfigured

3

Torrentz so that it operated as a search engine for other websites that made copyright-protected media—including works being prepared for commercial distribution—available to visitors. Visitors to Torrentz could search for and locate copyright-protected media, and they would then be redirected to the other sites, through which they could acquire through BitTorrent technology copyright-protected media without the lawful copyright owners' permission. Although there were non-infringing torrents on his website (for works that copyright protection had expired), defendant was aware that the vast majority of visitors used Torrentz to seek out and acquire copyright-protected media, and that was the website's primary function and benefit. Indeed, defendant himself used Torrentz to find and acquire copyright-protected media.

Starting by at least 2003, defendant identified websites that purported to make copyrighted materials available to visitors through BitTorrent technology. Defendant then contacted the operators of these websites, and requested that the operators add code to their websites to permit Torrentz to more efficiently retrieve information from them. Torrentz then used this information to assist users in their search for copyrighted materials. Dozens of websites offering copyright-protected media agreed to, and did, include such code, including Website A, Website B, Website C, Website D, and Website E. Defendant then created and caused to be created code that permitted Torrentz visitors to be re-routed to the other websites to assist the visitors' subsequent acquisition of copyrighted materials. Defendant knew this was a

4

mutually beneficial relationship: Torrentz received more visitors because the site efficiently pulled information from the other websites, and Torrentz redirected visitors to those websites with which it was associated, increasing their traffic and ability to generate income. Defendant knew it was unlawful to provide access to copyright-protected works without the permission of the copyright holder.

Defendant monetized Torrentz by soliciting advertisements for the site. Defendant knew that increased visitor traffic would lead to higher revenue, and that visitor traffic was dependent on the ease with which visitors to Torrentz could find and acquire copyrighted materials, including work being prepared for commercial distribution. Advertisers on Torrentz made payments into bank accounts defendant controlled. Defendant acknowledges that, between January 1, 2009 and March 31, 2015, advertisers deposited not less than $9,829,078 into bank accounts he controlled, and that these funds were payments for advertisements on Torrentz. Defendant further acknowledges that up to $9,500,000 of these revenues were the result of Torrentz assisting visitors in their effort to acquire copyright-protected media.

In furtherance of the conspiracy and to accomplish its unlawful objectives, defendant committed and caused to be committed numerous overt acts in the Northern District of Illinois and elsewhere, including the following: (a) on or about July 15, 2003, defendant rented and caused to be rented the website domain torrentz.com; (b) on or about April 7, 2006, defendant rented and caused to be rented the website domain torrentz.eu; (c) on or about January 8, 2014, defendant sent and

caused to be sent to Individual A payment of approximately $24,726 as compensation for Individual A's assistance in the operation of Torrentz; (d) on or about November 13, 2014, defendant sent an email to a representative of Advertiser A regarding a payment issue with the company's advertisements on Torrentz; and (e) on or about March 18, 2015, defendant caused Advertiser B to deposit approximately $117,982 into a Citibank checking account controlled by defendant, account number xxxxx8052, as payment for the company's advertisements on Torrentz, all in violation of Title 18, United States Code, Sections 371.

b.    <u>With respect to Count Two of the information:</u>

On or about April 18, 2011, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant ROBERT S. WAKSMUNDZKI, also known as "Flippy," willfully made and subscribed, and caused to be made and subscribed, a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2010, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that said return reported on the Schedule C (Profit or Loss from Business) that the net profit from Waksmundzki LLC was $257,957, when defendant knew that Waksmundzki LLC had a net profit that substantially exceeded that amount, in violation of Title 26, United States Code, Section, 7206(1).

6

Specifically, defendant received through Waksmundzki LLC payment from the companies that advertised on the Torrentz websites. The advertising payments were income and were deposited into accounts defendant controlled. Defendant utilized the services of a tax preparer, and for 2009 and 2010, he provided the preparer with his bank statements. Those statements documented his income. The tax preparer then prepared defendant's federal income tax returns. In 2009, the defendant suggested to the preparer that the income figure was low based on his tax return, but after discussing it with the preparer, defendant did not challenge the return because the preparer told him he could file the return with the lower income figure. After the returns were prepared, defendant reviewed them, signed them and caused them to be filed, and declared under penalty of perjury that the information contained therein was true and accurate to the best of his knowledge, despite knowing that the income listed was incorrect and too low.

On his federal income tax return for the tax year 2009 (Form 1040), defendant reported total income of $418,999, which he knew at the time was a false statement because it did not include advertising revenue of at least approximately $412,383. On his federal tax return for the tax year 2010 (Form 1040), defendant reported total income of $1,103,408, which he knew at the time was a false statement because it did not include advertising revenue of at least approximately $139,239. By failing to accurately report Waksmundzki LLC's gross receipts, defendant also underreported his net profit from operating the company. For tax year 2010, defendant's Schedule

C (Profit or Loss from Business) claimed that his net profit from Waksmundzki LLC was $257,957, when defendant knew that Waksmundzki LLC had a net profit that substantially exceeded that amount.

Defendant's material misrepresentations regarding his income for tax years 2009 and 2010 caused losses to the United States Department of Treasury, Internal Revenue Service of approximately $145,049 and $49,117, respectively, for a total of $194,166.

7. The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a. Count One carries a maximum sentence of 5 years' imprisonment. Count One also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count One, the judge also may impose a term of supervised release of not more than three years.

b.      Count Two carries a maximum sentence of 3 years' imprisonment. Count Two also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the Court must order costs of prosecution, estimated not to exceed $500. Defendant further understands that with respect to Count Two, the judge also may impose a term of supervised release of not more than one year.

9.      Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court unless it determines that restitution is not applicable because determining complex issues of fact related to the cause or amount of the victim losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process. The Court also may order restitution to any persons as agreed by the parties.

10.     Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

11.     Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 8 years' imprisonment. In addition, defendant is subject to a total maximum fine of $350,000, or twice the gross gain or gross loss resulting from the offenses of conviction, whichever is greater, mandatory costs of prosecution,

9

a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

### Sentencing Guidelines Calculations

12.     Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

13.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

         a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the

10

Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

      b.     **Offense Level Calculations**.

Count One:

      i.     The base offense level is 8 pursuant to Guideline §§ 2X1.1(a) and 2B5.3(a).

      ii.     The offense level is increased 18 levels pursuant to Guideline §§ 2B5.3(b)(1)(B) and 2B1.1(b)(1)(J), because the infringement amount was more than $3.5 million but not more than $9.5 million.

      iii.     The offense level is increased two levels pursuant to Guideline § 2B5.3(b)(2), because the offense involved the display, performance, publication, reproduction, or distribution of a work being prepared for commercial distribution.

      iv.     The offense level is increased two levels pursuant to Guideline § 2B5.3(b)(3)(A), because the offense involved the manufacture, importation, or uploading of infringing items.

Count Two:

      v.     The base offense level is 16 pursuant to Guideline §§ 2T1.1(a)(1) and 2T4.1(F), because the tax loss was more than $100,000 but not more than $250,000.

Combined Offense Level:

vi.     Pursuant to Guideline § 3D1.2, Counts One and Two each constitute a separate Group for purposes of determining the combined offense level.

vii.     Pursuant to Guideline § 3D1.4(c), Count One counts as one Unit and Count Two is disregarded because it is nine or more levels less serious than the Group with the highest offense level. Therefore, the combined offense level for Counts One and Two is 30.

viii.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

ix.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant

is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

        c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

        d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 27, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 70 to 87 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

    14.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation

officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

15.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Cooperation

16.    Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding, including, if requested, testimony in foreign legal proceedings. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

17.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart from the low end of the applicable guideline range, and shall recommend a sentence that includes a term of imprisonment in the custody of the Bureau of Prisons of 66 percent of the low end of the applicable guideline range. Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court.

18.    If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

19.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does

not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

20.     Regarding restitution as to Count One, the parties agree that restitution is not applicable because determining complex issues of fact related to the cause or amount of the victim losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

21.     Defendant agrees to pay restitution arising from Count Two and the relevant conduct set forth above, totaling $194,166, to the United States Department of the Treasury, Internal Revenue Service, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664. Defendant understands that the amount of tax loss as calculated by the Internal Revenue Service may exceed the amount of tax due as calculated for restitution in the criminal case.

22.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

23.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16

24.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

### Forfeiture

25.     Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

26.     Defendant agrees to forfeiture of the following specific property to the United States: $5,414,561 currently held in the custody of the Department of Homeland Security. In doing so, defendant admits that the property described above represents proceeds defendant obtained as a result of the offense, as alleged in the information. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has in it. If any of the specific property is not yet in the custody of the United States, defendant agrees to seizure of that property so that it may be disposed of according to law.

27.     In addition, defendant agrees to the entry of a personal money judgment in the amount of $9,829,078 which represents the total amount of proceeds traceable to the offense charged in Count One of the information. Defendant consents to the

immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment he will be ordered to pay. The parties agree that the $5,414,561 currently in the custody of the Department of Homeland Security will be applied to the personal money judgment.

28.     Defendant admits that because the directly forfeitable property, other than the specific property noted above, is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the personal money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2).

29.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

30.     Defendant agrees to waive and abandon any right, title, or interest he has in the following property currently held in the custody of the Department of Homeland Security: (a) three ASUS RS160-E5 servers; (b) ten ASUS RS100-E5 servers; (c) one Vizio television; (d) one Media Sonic Probox; (e) one Gateway laptop; (f) one MacBook Air; (g) one MacBook Pro; (h) one iPad Two; (i) one Super Micro Server; and (j) associated accessories.

31.     Defendant understands that the government, after publication of notice to others who may have an interest in the property, will seek an order of

18

abandonment from the Court, thereby authorizing the United States to destroy or otherwise dispose of such property according to law. Defendant understands that abandonment of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose.

32.     Defendant does not object to the entry of a forfeiture judgment as to a Chase checking account ending in -1739 in the name of "Waksmundzki, L.L.C.," containing approximately $608,000, because defendant has no ownership or other interest in that property. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has in it.

33.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture and/or abandonment carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

34.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's

criminal liability in *United States v. Robert S. Waksmundzki*, 19 CR 573.

35.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

36.     Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal case.

### Waiver of Rights

37.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.      **Right to be charged by indictment**. Defendant understands that he has a right to have the charges prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at

trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b.      **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.      If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.      If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the information separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c.      With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

d. **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

38.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

39.     Defendant understands that he has the right to have the criminal charges in the information brought within five years of the last of the alleged acts constituting the specified violations. By signing this document, defendant knowingly waives any right to have the charges in the information brought against him within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute of limitations or upon the timeliness with which the charges in the information were brought.

### Presentence Investigation Report/Post-Sentence Supervision

40.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

41.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's

24

Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

42.　For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

43.　Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including

providing financial statements and supporting records as requested by the United States Attorney's Office.

44.     Regarding matters relating to the Internal Revenue Service, defendant agrees as follows (nothing in this paragraph, however, precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS):

a.     Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant which directly or indirectly relates to or arises out of the course of conduct that defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

b.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning

them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant. Nothing in this paragraph or the preceding paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

45.     Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including one or more offenses to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to an offense that is an "aggravated felony" as that term is defined in Title 8, United States Code, Section 1101(a)(43), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

### Conclusion

46.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

47.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any

term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

48.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

49.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he

understands and voluntarily accepts each and every term and condition of this

Agreement.

AGREED THIS DATE: _____7/23/19_____

JOHN R. LAUSCH, JR.
United States Attorney

SEAN K. DRISCOLL
Assistant U.S. Attorney

ROBERT W. WAKSMUNDZKI
Defendant

STEVEN R. HUNTER
Attorney for Defendant

29