IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19 CR 00573 |
| | ) | Judge Edmund Chang |
| ROBERT WAKSMUNDZKI | ) | |
| Defendant. | ) | |

**MOTION FOR COMPASSIONATE RELEASE**

Now comes the defendant, Robert Waksmundzki, by and through his attorney, Steven R. Hunter, after having exhausted all avenues with the Bureau of Prisons, and respectfully moves this court, pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), to reduce the sentence of Robert Waksmundzki to time served and order him to be released from custody at CI-North Lake as soon as practicable and consistent with the judgment of medical personnel.

Robert Waksmundzki pled guilty to one count of Conspiracy to Commit Criminal Infringement of a Copyright and one count of Filing a False Tax Return. He was sentenced to 10 months in the Bureau of Prisons and has a release date of January 31, 2021. He is currently incarcerated at North Lake CI, which is a private, for-profit facility run by the GEO Group.

**I.     Statutory and regulatory framework**

The statutory and regulatory framework for compassionate release was described in detail in United States v. Hill, 19-cr-00038, (D.Conn. May 19,

2020). "Federal law allows a court to grant a 'compassionate release' motion to reduce a federal prisoner's sentence for 'extraordinary and compelling reasons.' 18 U.S.C. § 3582(c)(1)(A)(i). Previously it was only the BOP that could file this kind of motion, but amidst widespread complaints about the failure of the BOP to file motions on prisoners' behalf Congress amended the law with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), to allow prisoners the right to file their own motions for a sentence reduction if they first exhaust the statute's procedures for initially making a request to the warden to file a motion on their behalf. *See United States v. Pippin*, No. 16-cr-266, ECF No. 122 (W.D. Wash. May 20, 2020) (granting compassionate release to a 50-year-old CP defendant with "multiple chronic medical conditions" who had 28 months left on an 84 month sentence and was serving his time at FCI Lompoc.); *United States v. Nicholas Pagliuca,* 17 Cr. 432 (CS), Dkt. No. 63 (S.D.N.Y. May 18, 2020) (granting 69-year-old CP defendant with diabetes and heart issues compassionate release after serving 80 percent of 36-month sentence); *United States v. Kurtz,* 16-cr-20036, ECF No. 40 (D. Kan. May 12, 2020) (granting compassionate release to 73-year-old CP defendant hospitalized with COVID-19, who spent 18-20 days on a ventilator, "was non-responsive, non-verbal," and whose "prognosis was poor"); *United States v. Connell,* ---F. Supp. 3d---, 2020 WL 2315858, (N.D. Cal. May 8, 2020) (granting compassionate release to 69-year-old CP defendant with numerous chronic conditions serving year-and-a-day sentence at USP Lompoc); *United States v. Adam Field*, No. 18 Cr. 426 (JPO), Dkt. No. 38 (S.D.N.Y. May 4, 2020)

(granting CP defendant with hypertension and "nonphysical health conditions" incarcerated at FCI Danbury compassionate release) *United States v. Fischman*, No. 16-cr-00246-HSG, 2020 WL 2097615 (N.D. Cal. May 1, 2020) (granting compassionate release to 72-year-old convicted of possession of CP who had tested positive for COVID-19 and was incarcerated at Terminal Island; had approximately four months left on 70-month sentence); *United States v. Dillard*, Case No. 1:15-cr-170-SAB, Dkt. No. 71 (D. Idaho Apr. 27, 2020) (53-year-old with grievous health problems granted compassionate release after serving approximately half of 87-month sentence for second federal non-production CP offense); *United States v. Sawicz*, No. 08-cr-287, 2020 WL 1815851 (E.D.N.Y. Apr. 10, 2020) (releasing child-pornography offender with hypertension incarcerated at FCI Danbury with less than 5 months left on his sentence);*United States v. Almontes*, 2020 WL 1812713, at *1 (D. Conn. 2020).

If a prisoner has satisfied the statute's exhaustion requirement, section 3582(c)(1)(A) establishes several criteria for a court to consider when deciding whether to grant the motion for a sentence reduction. First of all, there has to be an "extraordinary and compelling reasons" to warrant a sentence reduction. 18 U.S.C. §3582(c)(1)(A)(i). The statute does not further define this term but it instructs courts to consider whether a sentence reduction is 'consistent with applicable policy statements issued by the Sentencing Commission.' *Ibid.* Congress has separately directed the Sentencing Commission to 'describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied

3

and a list of specific examples,' while also advising that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.' 28 U.S.C. §994(t). *Hill*, Id.

In accordance with this instruction from Congress, the Sentencing Commission has issued a policy statement in the U.S. Sentencing Guidelines that sets forth criteria for what constitute 'extraordinary and compelling reasons.' *See* U.S.S.G. §1B1.13 cmt. n.1 (2018). The commentary provides, for example, that 'extraordinary and compelling reasons exist, if the defendant 'is suffering from a terminal illness' or if the defendant otherwise has a serious condition 'that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.' *Ibid.* cmt. n.1(A). The commentary further provides for a catch-all 'Other Reasons' that '[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).' *Ibid.* cmt. n.1(D).

As numerous courts have recognized, the Sentencing Guidelines have not yet been revised to bring them into conformity with the First Step Act's authorization for defendants to bring their own motions after exhausting administrative procedures. Therefore, to the extent that the Guidelines commentary purports to vest authority solely with the BOP to make a determination of 'Other Reasons,' this delegation is no longer exclusive; courts also have independent authority to decide whether there are "Other Reasons"

that amount to "extraordinary and compelling reasons" to grant a motion for sentence reduction. *See United States v. Marks*, 2020 WL 1908911, at *5-7 (W.D.N.Y. 2020); *United States v. Haynes*, 2020 WL 1941478, at *14 (E.D.N.Y. 2020) (collecting cases); *United States v. Pinto-Thomaz*, ––– F. Supp. 3d –––, 2020 WL 1845875, at *2 (S.D.N.Y. 2020) (same); *Almontes*, 2020 WL 1812713, at *3 (same).

In addition to determining if 'extraordinary and compelling reasons' exist for a sentence reduction, a court must also "consider the factors set forth in 18 U.S.C. §3553(a) to the extent that they are applicable." 18 U.S.C. §3582(c)(1)(A). Therefore, a court must examine the same factors it did when it initially sentenced the defendant, including the nature and circumstances of the crime, the defendant's history and characteristics, and the multiple purposes of sentencing, such as providing just punishment, deterring crime, protecting the public from further crimes by the defendant, and providing the defendant with rehabilitation. *See* 18 U.S.C. §3553(a). In addition, a court must determine that '[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. §3142(g)." U.S.S.G. §1B1.13(2).' *United States v. Hill*, 19-cr-00038, (D.Conn. May 19, 2020).

## II.    Factors applying to Robert Waksmundzki

Robert Waksmundzki suffers from a serious medical condition that places him at a much higher risk of death, if he contracts the Covid-19 virus. In 2014, he saw a cardiologist for heart palpitations. (See Exhibit A Medical Records, filed separately under seal). The first time he met with counsel in

5

counsel's office, he nearly passed out and had to lie down on a couch. At his initial orientation at his assigned Bureau of Prisons institution, CI North Lake, Mr. Waksmundzki suffered a heart related episode. His blood pressure dropped, and he did pass out. Medical staff determined that he needed an EKG and to see a cardiologist. According to the CDC, a serious heart condition is a heightened risk factor for death or serious illness from the Covid-19 virus.[1] Medical care of this nature, in normal times, is provided by a local hospital. However, the North Lake CI facility is in crisis and is unable to provide medical care. In their own words they admit this, stating "Right now we are in the middle of a national pandemic. As soon as the local medical facilities re-open we will make sure everyone gets what they need." (See Exhibit B, filed under seal). Robert Waksmundzki requested that he receive treatment for his heart condition on May 4, 2020.

On that date, Robert Waksmundzki submitted a request for compassionate release. The request was ignored. After two weeks he contacted counsel for help. Counsel requested that Robert obtain documentation of his request for compassionate release, and Robert informed counsel that North Lake CI also ignored his request for documentation for compassionate release. Counsel attempted to call the facility but no telephone number could be located. Instead, counsel sent an email to the facility on May 14, 2020, asking for a response to the request for compassionate release. Counsel's request also has been ignored. This is consistent with the BOP

---

[1] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html

history of ignoring requests for compassionate release. This motion was filed on the 31st day from the original request, in compliance with 18 U.S.C. § 3582(c)(1)(A)(i).

There is no doubt that the COVID-19 pandemic is extraordinary, having killed tens of thousands of people in the United States in recent months. It is clear, as well, that Mr. Waksmundzki's medical condition renders him significantly more vulnerable than the average person to contract COVID-19 and also to suffer the worst of its complications.

In addition, there is no doubt that a congregate prison environment is inherently unsuited to protecting against the COVID-19 virus. (See Exhibit C, Infection Chart prepared by the Federal Defender Service). The virus is particularly insidious because of its invisible transmission by people who are infected but who do not feel or show any ill effect. Notwithstanding any precautions taken by the BOP to reduce the likelihood of an outbreak at its facilities, the fact remains that North Lake CI is a Covid-19 hotspot where the virus may spread rapidly once a single person is infected. CI North Lake has already sustained a significant outbreak of COVID-19 infections. As of May 29, 2020, the BOP reported that 22 inmates have contracted the Covid-19 virus. New outlets recently reported that North Lake CI suffered its first Coivd-19 related death.[2] In addition, although the Bureau of Prisons claims no staff are infected, Robert Waksmundzki reports that numerous guards have gotten ill and left, leaving the facility extremely short-staffed and resulting in the inmates

---

[2] See https://patch.com/michigan/across-mi/baldwin-prison-confirms-1st-inmate-covid-19-death and https://www.interlochenpublicradio.org/post/inmate-death-reported-north-lake-correctional-facility

being on lock-down most of the time. Robert Waksmundzki has seen the staff constantly working 12 hour shifts due to the crisis. Since North Lake CI is a privately run facility operated by the GEO Group, it is possible the guards are not considered BOP staff.[3] On April 21, 2020, Interlochen Public Radio reported that the GEO Group said five prison employees had contracted Covid-19 the virus. Social distancing is not possible at North Lake, where prisoners share shower facilities and telephones and laundry is washed by other inmates.

When the court sentenced Mr. Waksmundzki to a term of imprisonment, it certainly did not intend to sentence him to a significant risk of death or disability due to an infection at a federal prison facility. Mr. Waksmundzki's medical conditions and evidence of numerous infections at CI North Lake, and North Lake's inability to provide medical care, amount to "extraordinary and compelling reasons" for a sentence reduction, especially in light of the fact that only eight more months remain in Mr. Waksmundzki's prison term.

When the sentencing factors under 18 U.S.C. § 3553 are applied, it shows that Mr. Waksmundzki merits relief. First, as to what is a just punishment and deterrence, Mr. Waksmundzki has already been placed in severe conditions that would deter any rational person, including him. Because of the restrictions imposed at CI North Lake due to the COVID-19 crisis, he does not have access to prison programs. As a person who self-surrendered, he was required to spend 14 days in solitary as a quarantine

---

[3] On April 21, 2020, Interlochen Public Radio reported that the GEO Group said five prison employees had contracted Covid-19 the virus. See https://www.interlochenpublicradio.org/post/9-north-lake-correctional-facility-inmates-test-positive-covid-19

measure. And, as shown in Exhibit B, he has no access to necessary medical care. If Mr. Waksmundzki remains at CI North Lake, he will likely remain under severe conditions of confinement while the facility maintains intensive quarantine procedures to reduce the likelihood of more COVID-19 infections. Although the GEO Group has refused to release information about North Lake CI, news reports describe conditions that are so bad that they triggered a hunger strike by some inmates.[4] In addition, Mr. Waksmundzki forfeited a huge sum of money, $853,059.58 seized by the Government, approximately $480,763.53 in Chase checking account, and one 2014 Porsche Carrera S. Restutution in the amount of $194,166 was ordered. Also, as a legal resident but non-citizen, he may face deportation in the future.

As to the issue of danger under 18 U.S.C. § 3142(g), the court should find that Mr. Waksmundzki is not a danger to the public. He was convicted of non-violent financial crimes. According to the Presentence Report, he had zero criminal history points at his sentencing. He has never even been arrested until this case.

If released, Mr. Waksmundzki could live alone at his house located at 10538 S. Vicky Lane, Palos Hills, Illinois. If it is deemed wise, he could quarantine there for 14 days so as not to put at risk any probation officer.

---

[4] See 'It's hell':COIVD-19 concerns grow at federal immigrant prison in Baldwin" at
https://www.michiganadvance.com/2020/05/10/its-hell-covid-19-concerns-grow-at-federal-immigrant-prison-in-baldwin/

### III.     **Conclusion**

For these reasons the defense respectfully moves this court to order the Bureau of Prisons to release Robert Waksmundzki as soon as is practicable and under any conditions that the court sees fit to impose.

Respectfully submitted,

s/Steven  R. Hunter
Steven R. Hunter

Law Office of Steven R. Hunter
900 West Jackson Blvd., Suite 5-W
Chicago, IL 60607
(32) 466-9466
srhunter@srhunterlaw.com